SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| DAVID PETERSON, as an individual and derivatively on behalf of VOICEBOX TECHNOLOGIES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KENNEWICK, an individual; RICHARD KENNEWICK, an individual; ROBERT KENNEWICK, an individual; NUANCE COMMUNICATIONS, INC., a Delaware corporation; and VOICEBOX TECHNOLOGIES CORPORATION, a Delaware corporation,<br><br>Defendants. | No.<br><br>COMPLAINT |

Plaintiff David Peterson, individually and derivatively on behalf of Voicebox Technologies Corporation, alleges as follows against Defendants Michael Kennewick, Richard Kennewick, Robert Kennewick, Nuance Communications, Inc., and Voicebox Technologies Corporation:

## I. INTRODUCTION

1.1     Defendant Voicebox Technologies Corporation ("Voicebox") is a voice recognition technology company founded and directed by Michael Kennewick, Richard Kennewick, and Robert Kennewick (collectively, "the Kennewicks"). Plaintiff David Peterson was a Voicebox employee and received common stock in Voicebox for his

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

contributions. In 2018, Voicebox fiduciaries on the Board of Directors, including the Kennewicks, structured a merger transaction with Nuance Communications, Inc. ("Nuance"), to make themselves and the other closely-aligned parties whole and to extract additional unwarranted compensation via unwarranted non-compete agreements—all at the expense of the Voicebox common shareholders, including Peterson. Through those actions, and others, the Kennewicks breached fiduciary duties to act in the best interests of the Voicebox common shareholders and Peterson.

1.2     Once the merger was complete, Nuance, and its wholly-owned subsidiary Voicebox, terminated Peterson and failed to pay him compensation due under Washington law and a Severance Agreement earlier executed by Peterson and Voicebox. Nuance and Voicebox are in breach of contract and in violation of Revised Code of Washington ("RCW") 49.48 and 49.52.

1.3     Among other relief, Peterson prays for an award of actual, statutory, exemplary, and compensatory damages in an amount to be proven, both individually and derivatively on behalf of Voicebox. Specifically with regard to Peterson's employment claims, among other relief, Peterson prays for an award of unpaid wages and double damages in accordance with RCW 49.48 and 49.52.

## II. PARTIES

2.1     Plaintiff David Peterson is an individual residing in Edmonds, Snohomish County, Washington. At the relevant times discussed below, Peterson was a shareholder and employee of Voicebox.

2.2     Defendant Michael Kennewick is an individual residing in Bellevue, King County, Washington. Michael Kennewick was CEO and a director of Voicebox at the relevant times discussed below.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

2.3     Defendant Richard Kennewick is an individual residing in Woodinville, King County, Washington. Richard Kennewick was President and a director of Voicebox at the relevant times discussed below.

2.4     On information and belief, Defendant Robert Kennewick is an individual residing in Bellevue, King County, Washington. Robert Kennewick was CTO and a director of Voicebox at the relevant times discussed below.

2.5     Defendant Nuance is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Burlington, Massachusetts.

2.6     Defendant Voicebox is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Bellevue, King County, Washington.

## III. JURISDICTION AND VENUE

3.1     This Court has jurisdiction over this action under RCW 7.24.020 and RCW 2.08.010.

3.2     This Court has personal jurisdiction over all defendants. Among other bases for jurisdiction the Kennewicks are residents of the State of Washington, Voicebox is headquartered within and conducts business in the State of Washington, and Nuance transacts business within the state of Washington, including the actions giving rise to this lawsuit.

3.3     Venue in this Court is appropriate by contractual agreement of the parties, under RCW 4.12.020, and because many of the transactions and events at issue in this dispute took place in King County, Washington.

## IV. FACTS

4.1     Voicebox is a voice recognition technology company founded by the Kennewicks. Michael Kennewick served as CEO of Voicebox at the relevant times discussed below.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.2     In addition to common stock, Voicebox issued several classes of preferred stock. In the event of a liquidation transaction, holders of preferred stock held liquidation preferences, which guaranteed those shareholders priority return over common shareholders at a prescribed sum. In any liquidation transaction, common shareholders were entitled to a pro rata share of the residual amount, after payment of the preferred preferences. Preferred shareholders also retained the option to be treated as common shareholders.

4.3     The Kennewicks controlled three of the five Voicebox directorship seats and all Voicebox decision-making at all relevant times discussed below. The other directorship positions were controlled by closely-aligned parties and/or preferred shareholders at the relevant times discussed below (collectively, with the Kennewicks, the "Voicebox Insiders").

4.4     Peterson has decades of experience in the automotive technology industry and extensive contacts within the automotive industry.

4.5     Peterson worked as an employee of Voicebox for more than fifteen years, most recently in the role of Vice President, Global Automotive Sales and Business Development.

4.6     Peterson was integral to the sales and licensing of Voicebox's voice recognition technologies to several auto manufacturers. Peterson was the procuring cause of these relationships.

4.7     But for Peterson's contributions, Voicebox would not have achieved the same level of success. Indeed, its relationships with auto manufacturers provided Voicebox with its principal source of revenue for the balance of the company's existence, and subsidized various other Voicebox business ventures, none of which were productive in comparison.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.8     In addition to base salary and commissions, Peterson received Voicebox common stock in return for his valuable contributions to Voicebox.

4.9     In or around 2012, the Kennewicks began pursuing an exit strategy to monetize their interests in Voicebox and the investments of Voicebox Insiders and other preferred shareholders. The Voicebox Insiders, also preferred shareholders, likewise advocated a sale to protect their investments.

4.10    On information and belief, at some time before a sale was completed, the Kennewicks used their control and dominion over Voicebox to gift or issue stock and restricted stock options to family members, some of whom did not work for the Company, and/or other close associates who did not make any significant contribution to Voicebox.

4.11    Eventually, the Kennewicks and other Voicebox Insiders approved a sale to a competitor, Nuance (the "Nuance Transaction"). The Nuance Transaction, which closed on or about April 2, 2018, was structured as a reverse triangular merger, resulting in Voicebox becoming a wholly owned subsidiary of Nuance. That said, effectively, the Nuance Transaction conveyed only the profitable licensing relationships with auto manufacturers to Nuance. Other intellectual property previously controlled by Voicebox was left out of the transaction and retained in a trust controlled by a single trustee, Michael Kennewick (the "Trust").

4.12    In return for conveying the auto manufacturer relationships to Nuance, Voicebox received $80 million.

4.13    On information and belief, $80 million did not represent fair value for Voicebox. Indeed, just a couple years earlier, when the company was in a roughly similar posture, Nuance offered significantly more in a bid to acquire Voicebox, but that deal ultimately was not consummated.

4.14    At the time of the Nuance Transaction, the liquidation preferences of the Voicebox preferred shareholders totaled approximately $60 million.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.15  On information and belief, the Kennewicks did not pursue, or even consider, reductions in the liquidation preferences due to the preferred shareholders.

4.16  The Kennewicks extracted nearly all of the value above and beyond the full liquidation preferences of the Voicebox preferred shareholders in non-compete agreements totaling $19 million. Michael Kennewick, Robert Kennewick, and Richard Kennewick each received an equal payout of $6.3 million from the Nuance Transaction purportedly to refrain from competing with the transferred Voicebox assets.

4.17  Michael Kennewick, Robert Kennewick, and Richard Kennewick were not equally responsible for the licensing agreements with auto manufacturers or the related technology, nor are they equally capable of competing with Nuance in the future.

4.18  On the other hand, Peterson was responsible for developing the auto manufacturer relationships. Yet, Peterson was not offered any compensation to refrain from competition as part of the Nuance Transaction. Indeed, Peterson was not offered, and did not receive, any directed compensation from the Nuance Transaction.

4.19  The market does not justify payments of $6.3 million individually and $19 million in total for non-compete agreements for a company like Voicebox and/or a transaction of this scale.

4.20  After distribution of the non-compete payouts and full liquidation preferences to the preferred shareholders, only approximately $1 million was left to be distributed to the common shareholders (approximately 1.25% of the total deal value). While the preferred shareholders received between $.60 and $1.15 per share (depending on the respective amounts of their original investments), the common shareholders received only $.07 per share.

4.21  Peterson, nominally a holder of 0.75% of the company on a fully diluted basis, received approximately $43,000, or approximately 0.06% of the proceeds of the Nuance Transaction.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.22    Notwithstanding the disparate, unfair treatment of the common shareholders, the Kennewicks approved the Nuance Transaction under the structure described above, as did the other preferred shareholder(s) on the Board of Directors. The Kennewicks did not pursue alternative deal structures that would have yielded fair returns to the common shareholders.

4.23    At least four of the five Voicebox directors at the time of the Nuance Transaction were conflicted. Accordingly, there were insufficient disinterested directors to approve the Nuance Transaction by a disinterested director review.

4.24    The Voicebox Board of Directors was at all relevant times captured by the interests of the Kennewicks and/or the Voicebox Insiders and incapable of acting in the corporate interest.

4.25    At all relevant times, three of the five directors were Michael Kennewick, Robert Kennewick, and Richard Kennewick. All were conflicted and self-interested as to the actions described herein.

4.26    At all relevant times, the remaining two directors of Voicebox were preferred shareholders closely aligned with the Kennewicks. These directors were self-interested in obtaining a rapid, full value deal for the preferred shareholders and did not oppose the Nuance Transaction even though it yielded diminished proceeds to the company and was structured to divert virtually all proceeds above the liquidation preferences to the Kennewicks.

4.27    Further, the Kennewicks and other preferred shareholders controlled a majority of the outstanding Voicebox shares and used that majority ownership to approve the Nuance Transaction in a purported shareholders' vote.

4.28    The Voicebox Board of Directors did not call for a vote of disinterested shareholders. Indeed, Peterson, a significant common shareholder, was never offered the opportunity to vote on the Nuance Transaction at all.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.29     Following the Nuance Transaction, Michael Kennewick controls the Trust and has stated that he intends to use the Trust intellectual property assets to start a new company of indefinite duration.

4.30     While the Trust is purportedly for the benefit of the Voicebox common shareholders, there is no certainty that they will receive any value from it, whether now or indefinitely into the future.

4.31     On or about April 17, 2018, Nuance terminated Peterson's employment without cause.

4.32     On or about January 15, 2015, Peterson and Voicebox had entered into a Severance and Change in Control Agreement ("Severance Agreement"). Paragraph 3(b)(i) of the Severance Agreement provides that if the Company terminated Peterson's employment without Cause, it would furnish him with a one-time lump sum severance payment equal to the sum of (a) six months of his then-current base salary; and (b) six times the average monthly commission paid to him in the prior fiscal year.

4.33     On or about April 17, 2018, Nuance transmitted to Peterson a Termination Agreement that purported to effectuate his Severance Agreement. The Termination Agreement offered Peterson $121,505.36 in severance. Peterson had previously informed Nuance that the correct amount of the severance due to him under his Severance Agreement is $234,587.59.

4.34     Nuance and Voicebox have refused to pay Peterson any compensation due and owing since his termination, including the severance due and owing to him under his Severance Agreement.

### V. FIRST CAUSE OF ACTION—BREACH OF FIDUCIARY DUTIES (THE KENNEWICKS)

5.1     Peterson incorporates and realleges the above averments.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

5.2 As executives and directors, the Kennewicks owe fiduciary duties to act in the financial interest of Voicebox's residual claimants, the common shareholders, including Peterson.

5.3 The Kennewicks breached their fiduciary duties by and through their self-interested actions before and during the Nuance Transaction.

5.4 The Kennewicks' breach of duties proximately and legally harmed and damaged Voicebox. The Kennewicks used their position of power to extract value from the company and direct it to themselves, their family members, and/or closely aligned Voicebox Insiders.

5.5 Demand on the Voicebox Board of Directors to take remedial action is excused because a demand would have been futile.

5.6 Further, the Kennewicks' breach of duties proximately and legally harmed Peterson directly. If Peterson is to receive any hypothetical future benefit from his Voicebox investment, he is beholden to the whim of Michael Kennewick indefinitely into the future, an unfair arrangement to which Peterson did not agree.

5.7 The Kennewicks' actions cannot be justified under the business judgment rule because the Kennewicks were both the decision-makers and the beneficiaries of the decisions described herein, and disinterested decision-makers did not ratify the actions.

5.8 To the extent discovery reveals that Nuance, or agents of Nuance, knowingly cooperated in structuring a deal to enrich the Kennewicks or other Voicebox Insiders and/or deprive the Voicebox common shareholders of a fair return in the Nuance Transaction, Peterson reserves the right to amend his complaint.

### VI. SECOND CAUSE OF ACTION—BREACH OF CONTRACT (NUANCE AND VOICEBOX)

6.1 Peterson incorporates and realleges the above averments.

6.2 Nuance and Voicebox have refused to provide Peterson with the severance payment due under his Separation Agreement and thereby breached that agreement.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

6.3 As a direct and proximate result of Nuance and Voicebox's breach of contract, Peterson has been damaged in an amount no less than $234,587.59.

## VII. THIRD CAUSE OF ACTION—VIOLATION OF RCW 49.48.010
## (NUANCE AND VOICEBOX)

7.1 Peterson incorporates and realleges the above averments.

7.2 RCW 49.48.010 requires an employer to pay all wages due to a terminated employee by the end of the next established pay period. The payments due to Peterson under the Severance Agreement constitute wages within the meaning of RCW 49.48.010.

7.3 Nuance and Voicebox's failure to provide Peterson with the severance pay due under the Severance Agreement constitutes a violation of RCW 49.48.010.

7.4 As a direct and proximate result of Nuance and Voicebox's violation of RCW 49.48.010, Peterson has been damaged in an amount no less than $234,587.59.

## VIII. FOURTH CAUSE OF ACTION—VIOLATION OF RCW 49.52.050
## (NUANCE AND VOICEBOX)

8.1 Peterson incorporates and realleges the above averments.

8.2 RCW 49.52.050 prohibits any employer, officer, vice-principal, or managing agent from willfully withholding wages due to any employee by contract or statute.

8.3 The payments due to Peterson under the Severance Agreement constitute wages within the meaning RCW 49.52.050.

8.4 Nuance and Voicebox's willful withholding of the wages due to Peterson under the Severance Agreement constitute a violation of RCW 49.52.050.

8.5 RCW 49.52.070 provides that the remedy for a violation of RCW 49.52.050 is payment of twice the wages wrongfully withheld.

COMPL. – Page 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

8.6 As a direct and proximate result of Nuance and Voicebox's violation of RCW 49.52.050, Peterson has been damaged in an amount no less than $469,175.18.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment as follows:

A. Unpaid wages no less than $234,587.59.

B. Double damages in accordance with RCW 49.52.

C. For an award of actual, statutory, exemplary, and compensatory damages in an amount to be proven at trial or otherwise.

D. Prejudgment Interest.

E. For an award of attorneys' fees and costs in accordance with RCW 49.48 and RCW 49.52 and to the fullest extent recoverable by contract or at law or equity

F. For such other and further relief as the Court deems just and equitable.

DATED this 7th day of August 2018.

McNAUL EBEL NAWROT & HELGREN PLLC

By: s/Curtis C. Isacke
    Gregory J. Hollon, WSBA No. 26311
    Curtis C. Isacke, WSBA No. 49303
    600 University Street, Suite 2700
    Seattle, WA 98101
    Phone: (206) 467-1816
    Fax: (206) 624-5128
    Email: ghollon@mcnaul.com
           cisacke@mcnaul.com

FRANK FREED SUBIT & THOMAS LLP

By: s/Michael C. Subit
    Michael C. Subit, WSBA No. 29189
    705 Second Avenue, Suite 1200
    Seattle, WA 98104-1798
    Phone: (206) 682-6711
    Fax: (206) 682-0401
    Email: msubit@frankfreed.com

*Attorneys for Plaintiff*

COMPL. – Page 11

3965-001 hg11ce27r9.005 2018-08-07

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816