UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID PETERSON, as an individual and derivatively on behalf of VOICEBOX TECHNOLOGIES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KENNEWICK, an individual; RICHARD KENNEWICK, an individual; ROBERT KENNEWICK, an individual; NUANCE COMMUNICATIONS, INC., a Delaware corporation; and VOICEBOX TECHNOLOGIES CORPORATION, a Delaware corporation,<br><br>Defendants. | Civil Action No. 2:18-cv-1302-BJR<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT, DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, AND DENYING THE KENNEWICK DEFENDANTS' MOTION TO DISMISS |

Plaintiff David Peterson, a Washington State resident, brought the present action in the Superior Court of Washington for King County, asserting one claim against Defendants Michael, Richard, and Robert Kennewick ("the Kennewicks"), and three claims against Defendants Voicebox Technologies Corporation ("Voicebox") and Nuance Communications, Inc. ("Nuance") (collectively the "Corporate Defendants"). Doc. 1-1. The Corporate Defendants removed the matter, maintaining that, unlike the Kennewicks, they are not Washington State residents; and that Plaintiff "misjoined" and/or fraudulently joined his claims

1

against the diverse corporations with his claim against the nondiverse Kennewicks. *See* Doc. 1. Thus, the Corporate Defendants argue, the Court should sever and remand to state court Plaintiff's claim against the Kennewicks, and exercise jurisdiction over the claims against the Corporate Defendants. *See id*. Plaintiff, in turn, moved to remand the entirety of the case. Doc. 13. The Corporate Defendants oppose Plaintiff's motion. Doc. 19. Separately, the Kennewicks moved to dismiss the sole claim against them for, *inter alia*, failure to state a claim upon which relief can be granted. Doc. 15. Also pending is Plaintiff's motion for default judgment against the Kennewicks, which Plaintiff filed before the Kennewicks moved to dismiss, but which Plaintiff insists should still be granted. Doc. 10; *see* Doc. 23.

Having reviewed the parties' briefs together with all relevant materials, the Court finds that this matter should be remanded to state court. Thus, the Court grants Plaintiff's motion to remand and denies for lack of subject matter jurisdiction—and as moot—Plaintiff's motion for default judgment against the Kennewicks (Doc. 10) and the Kennewicks' motion to dismiss (Doc. 15). The Court's reasoning follows.

## I. BACKGROUND

A. <u>Factual Background</u>

Plaintiff David Peterson, a Washington resident, is a former employee and common shareholder of Voicebox. Compl., Doc. 1-1 ¶ ¶ 1.1, 2.1. Voicebox, a voice recognition technology company, was founded in the early 2000s by the Kennewicks, who are also Washington residents. *See id*. ¶ ¶ 1.1, 2.2-2.4. During the relevant period, the Kennewicks occupied three of the five Voicebox directorship seats. *Id*. ¶ 4.3.

According to Plaintiff's Complaint, in or about 2012, the Kennewicks "began pursuing an exit strategy to monetize their interests" as well as the investments of "Voicebox Insiders,"

who Plaintiff defines as "closely-aligned parties and/or preferred shareholders." *Id*. ¶¶ 4.3, 4.9. To that end, Plaintiff asserts, the Kennewicks "used their control and dominion over Voicebox to gift or issue stock and restricted stock options" to family and friends who "did not make any significant contribution to Voicebox." *Id*. ¶ 4.10.

On April 2, 2018, Voicebox was acquired by Nuance, a company also involved in voice recognition technology. *Id*. ¶ 4.11. The Complaint is ambiguous as to the precise structure and timing of the series of transactions involved in the acquisition. *See*, *e.g.*, *id*. ¶ 4.13-4.21 (failing to explain the timing of the payment(s) from Nuance, and through which entities and/or persons this money flowed); *Compare id*. ¶¶ 1.1, 4.10, 4.11 (referring, generally, to the "Nuance Transaction" that closed on April 2, 2018 as a "sale") and *id*. 1.2, 4.11 (referring, generally, to the "Nuance Transaction" as a "merger") and Doc. 13 at 13 (asserting that all Defendants "entered into a purchase and sale transaction") with *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 345 (1963) (describing the "important differences between merger and a pure purchase of assets"). As best the Court the can tell from Plaintiff's version, the broad strokes are as follows.

The Nuance Transaction was structured as a reverse triangular merger that resulted in Voicebox becoming a wholly-owned subsidiary of Nuance. *Id*. ¶ 4.11. Despite Voicebox becoming a wholly-owned subsidiary, only some of Voicebox's numerous patents and licensing agreements were transferred to Nuance. *See id*. ¶¶ 4.5-4.6, 4.11. Voicebox's remaining patents and licensing agreements were—at some point before the April 2, 2018 merger date—placed into a trust controlled by a single trustee: Michael Kennewick ("the Kennewick Trust"). *See id*. ¶ 4.11. In consideration for the merger, Nuance paid a total of $80 million. *Id*. ¶ 4.12. Pursuant to the liquidation preferences of Voicebox's preferred shareholders, approximately $60 of this

$80 million was distributed to the preferred shareholders. *Id*. ¶ 4.14. Of the approximately $20 million remaining, $18.9 million went to the Kennewicks pursuant to non-compete agreements worth $6.3 million each, which each of the three Kennewicks signed. *Id*. ¶ 4.16.[1] Thus, "only approximately $1 million was left" to be distributed to the common shareholders such as Plaintiff. *Id*. ¶ 4.20. Plaintiff, "nominally a holder of 0.75% of [Voicebox] on a fully diluted basis, received approximately $43,000, or approximately 0.06% of the proceeds of the Nuance Transaction." *Id*. ¶ 4.21.

On April 17, 2018, approximately two weeks after the merger, Nuance terminated Plaintiff's employment without cause. *Id*. ¶ 4.31.

B. Procedural Background

On August 8, 2018, Plaintiff served on all Defendants his unfiled Complaint and a Summons, thereby initiating this action in state court. Doc. 11, Ex. A-E.[2]

In Count 1 of his Complaint, Plaintiff, individually and derivatively on behalf of Voicebox, claims that the Kennewicks breached their fiduciary duties to Voicebox "by and through their self-interested actions before and during the Nuance Transaction." Compl. ¶¶ 5.1-

---

[1] As indicated above, it is unclear whether these non-compete agreements were between Nuance and Voicebox, and, therefore, part of the merger transaction(s); or whether, for example, these non-competes were between Nuance and each of the Kennewicks individually. *See generally id*. It is further unclear whether the distributions to the preferred shareholders preceded or followed the consideration given to the Kennewicks under the non-competes. *See id*.

[2] *See* Wash. Super. Ct. Civ. R. 3(a) ("a civil action is commenced [under Washington law] by service of a copy of a summons together with a copy of a complaint"); RCW 4.28.020 (Washington state courts are "deemed to have acquired jurisdiction" "from the time of commencement of commencement of the action by service of summons, or by filing a complaint").

4

5.8.³ In Count 2, Plaintiff alleges that Nuance and Voicebox "have refused to provide [Plaintiff] with the severance payment due" under a 2015 Separation Agreement between Plaintiff and Voicebox. *Id*. ¶ ¶ 6.1-6.3.⁴ Thus, Plaintiff claims, the Corporate Defendants are in breach of contract. *Id*. Similarly, in Count 3, Plaintiff alleges that the Corporate Defendants' failure to provide Plaintiff with the severance pay owed to him under the Separation Agreement violates RCW 49.48.010, which requires employers to pay all wages due to a terminated employee by the end of the next established pay period. *Id*. ¶ ¶ 7.1-7.4. In Count 4, Plaintiff claims that the Corporate Defendants willfully withheld these wages, in violation of RCW 49.52.050. *Id*. ¶ ¶ 8.1-8.6.

On August 31, 2018, the Corporate Defendants filed a notice of removal, maintaining that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, the Corporate Defendants contend that they are not citizens of Washington State; and that Plaintiff fraudulently joined the nondiverse Kennewicks and/ or fraudulently "misjoined" the claim against the nondiverse Kennewicks with the claims against the Corporate Defendants. Doc. 1. Thus, the Corporate Defendants argue, the Court should sever and remand to state court

---

³ Plaintiff, in his Complaint, takes issue with several aspects of the Nuance Transaction. First, Plaintiff maintains that "$80 million did not represent fair value for Voicebox." *Id*. ¶ 4.13. In addition, Plaintiff claims, "[t]he market does not justify payments of $6.3 million individually and $19 million in total for non-compete agreements for a company like Voicebox and/or a transaction of this scale." *Id*. 4.19. Moreover, Plaintiff asserts, the Kennewicks "were not equally responsible for the licensing agreements" that were acquired by Nuance, "nor are they equally capable of competing with Nuance in the future." *Id*. ¶ 4.17. As to the $60 million that was distributed to the preferred shareholders, Plaintiff alleges that the Kennewicks "did not pursue, or even consider, reductions in the liquidation preferences due to preferred shareholders." *Id*. ¶ 4.15. Thus, Plaintiff claims, the common shareholders were treated unfairly; and the Kennewicks, Plaintiff continues, did not "pursue alternative deal structures that would have yielded fair returns to the common shareholders." *Id*. 4.22.

⁴ Specifically, Plaintiff alleges that in April 2018, Nuance transmitted to Plaintiff a Termination Agreement that "purported to effectuate" the 2015 Separation Agreement. *Id*. ¶ 4.33. The Separation Agreement, Plaintiff continues, provides that if Voicebox terminated Plaintiff's employment without cause, Voicebox would "furnish him with a one-time lump sum severance payment equal to the sum of (a) six months of his then-current base salary; and (b) six times the average monthly commission paid to him in the prior fiscal year." *Id*. ¶ 4.32. According to Plaintiff, the correct amount due to him under these terms is $234,587.59. *Id*. ¶ 4.33. The Termination Agreement, however, offered Plaintiff only $121,505.36 in severance pay. *Id*. ¶ 4.33.

5

Plaintiff's claim against the Kennewicks, and exercise jurisdiction over Plaintiff's claims against the companies. *Id*.

On September 12, 2018, Plaintiff moved for default judgment against the Kennewicks, asserting that the Kennewicks had not appeared, pleaded, or answered Plaintiff's Complaint in either court. Doc. 10.

On September 13, 2018, the Kennewicks entered their appearance. Doc. 12.

On October 1, 2018, Plaintiff moved to remand this matter in its entirety, arguing that Plaintiff's claims are not fraudulently or otherwise "mis-" joined; and, in any event, that diversity jurisdiction as to Plaintiff's claims against the Corporate Defendants is "unclear" given that certain "facts suggest that Voicebox's nerve center remained in Washington" even after its merger with Nuance. Doc. 13; Doc. 21 at 10-12. The Corporate Defendants timely opposed Plaintiff's motion. Doc. 19.

On October 9, 2018, the Kennewicks moved to dismiss, arguing that "[i]nstead of determining whether remand or severance of the claim against the Kennewicks is warranted," the Court should "simply" dismiss it. *See* Doc. 15 at 2.

C. <u>Resolving the Parties' Motions</u>

As indicated above, there are three motions before the Court: Plaintiff's motion to remand (Doc. 13); Plaintiff's motion for default judgment against the Kennewicks (Doc. 10); and the Kennewicks' motion to dismiss (Doc. 15). As to the latter two motions, Plaintiff, in his briefing, insists that without ruling on jurisdiction, the Court can (and should) enter a default judgment against the Kennewicks (*see* Doc. 23 at 8-9), while the Kennewicks insist that the Court can (and should) dismiss Plaintiff's claim against them for, *inter alia*, failure to state a claim (*see generally* Doc. 10). Both parties are incorrect. "To avoid entering a default [or other]

judgment that can be later successfully attacked as void, a court should determine whether it has the power, *i.e*., the jurisdiction, to enter the judgment [or order] in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Indeed, a district court has an "affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d at 712.

In its motion to remand, Plaintiff, of course, maintains that the Court does not have subject matter jurisdiction over its claim against the Kennewicks. The Kennewicks, in turn, do not dispute that they are nondiverse defendants. Thus, whether the Court can rule on the substance of either of these motions turns on whether the Court can properly exercise jurisdiction over Plaintiff's claim against the Kennewicks. *See In re Tuli*, 172 F.3d at 172; *see also*, *e.g.*, *Wood v. Santa Barbara Chamber of Commerce, Inc*., 705 F.2d 1515, 1522 (9th Cir. 1983) (district court properly refused to enter default judgment where it lacked personal jurisdiction against defendants). Accordingly, the Court begins its analysis with Plaintiff's motion to remand the entirety of the matter to state court.

## II.     LEGAL STANDARD FOR REMOVAL

Under 28 U.S.C. § 1441(a), defendants may remove any civil action brought in state court that could have been originally brought in federal court. Federal courts have original jurisdiction over, *inter alia*, cases where there exists a complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).[5] Defendants who remove cases on the basis of diversity jurisdiction must prove, by a

---

[5] The Corporate Defendants do not contend that there is any other basis for federal court jurisdiction. *See* Doc. 1; Doc. 19.

7

preponderance of the evidence, that removal is proper. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). There exists a "strong presumption against removal jurisdiction," which "must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (internal quotation omitted); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (courts should "strictly construe the removal statute against removal jurisdiction"); *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941) ("Due regard for the rightful independence of state governments … requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which [§ 1441] has defined.").

### III. ANALYSIS

A. <u>The Parties' Citizenship</u>

As noted above, the Corporate Defendants removed this matter maintaining, as is required by 28 U.S.C. § 1332(a), that there is complete diversity between Plaintiff Peterson, a Washington resident, and both of the Corporate Defendants, who, Defendants maintain, are citizens of (only) Delaware and Massachusetts. Doc. 1 ¶ ¶ 1, 7-8. According to Plaintiff, however, the complete diversity test is not met because Voicebox is a citizen of Washington. Doc. 21 at 9-11. "At the very least," Plaintiff maintains, "jurisdictional discovery is necessary." *Id*. at 11.[6]

---

[6] Plaintiff, in its Complaint, asserts that Voicebox is organized in Delaware and—even after its merger with Nuance—has its principle place of business in Bellevue, Washington. Compl. ¶ 2.6. The Corporate Defendants, in their notice of removal, assert that Voicebox, like Nuance, has its principle place of business in Massachusetts. Doc. 1 at 3. In support of this contention, the Corporate Defendants submitted with their opposition to Plaintiff's motion to remand, a declaration to this effect. *See* Fitzgerald Decl., Doc. 20 (swearing, as the Assistant Secretary for Nuance and Voicebox, that following the merger, "Voicebox relocated its corporate headquarters to Massachusetts, to the same location as Nuance's corporate headquarters" and "replac[ed] all Voicebox's executive officers with individuals who have their principle place of business at Nuance's corporate headquarters"). Plaintiff, in turn, submitted its own declaration and exhibits that, according to Plaintiff, "suggest that Voicebox's nerve center remained in Washington as of" the initiation of this action. Doc. 21 at 10 (citing Peterson Decl., Doc. 22, Exs. A-C). Thus, Plaintiff argues, the Corporate Defendants have not "carried their heavy burden of proving complete diversity." *Id*.

8

Given the parties' submissions, the Court agrees with Plaintiff that Voicebox's citizenship is, at best, "unclear." *See* Doc. 1 ¶ 8; Doc. 20; Doc. 21, Exs. A-C. Thus, the Corporate Defendants have not proven by a preponderance of the evidence that diversity jurisdiction exists between Plaintiff and the Corporate Defendants. *See Geographic Expeditions, Inc.*, 599 F.3d at 1107. The Court will not, however, order that the parties engage in jurisdictional discovery to determine Voicebox's citizenship because, for the reasons explained below, it finds that the Corporate Defendants have failed to establish that removal is proper based on either ground that they raise: fraudulent joinder and fraudulent or procedural "misjoinder."

B. Fraudulent Joinder

In their notice of removal, the Corporate Defendants first maintain that Plaintiff "fraudulently joined" the nondiverse Kennewicks. *See* Doc. 1 ¶ ¶ 15-19. Thus, the Corporate Defendants argue, removal of this matter is proper, and the Court should sever and remand to state court Plaintiff's claim against the Kennewicks. *See generally id.*[7]

Complete diversity is not required for removal based on diversity jurisdiction if the nondiverse defendant (here, the Kennewicks) has been "fraudulently joined." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder is a "term of art." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "Joinder of a nondiverse defendant is deemed fraudulent … if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id*. (internal quotation

---

[7] In their opposition, the Corporate Defendants go a step further, arguing that in lieu of remanding to state court Plaintiff's claim against the Kennewicks, the Court could dismiss it without prejudice. Doc. 19 at 4. As explained above, however, a court must have jurisdiction over a claim before it can dismiss it. Indeed, later in their briefing, the Corporate Defendants admit as much. *See* Doc. 19 at 15 (quoting *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 584-85 (1999) and noting that a district court may *only* "drop" a party, sever a claim, or remand on non-meritorious grounds, *i.e.*, grounds that "make[] no assuming of law-declaring power," when it lacks jurisdiction).

omitted). Removing defendants are "entitled to present [] facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339. Fraudulent joinder must be proven by clear and convincing evidence. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Removing defendants bear this "heavy burden" given "both the strong presumption against removal jurisdiction and the general presumption against fraudulent joinder." *Hunter v. Philip Morris USA,* 582 F.3d 1039, 1046 (9th Cir. 2009) (internal quotations omitted).

Here, the Corporate Defendants maintain that Plaintiff has obviously failed to state a cause of action against the Kennewicks because Plaintiff lacks standing to bring his breach of fiduciary duties claim in Count 1. Doc. 1 ¶¶ 15-18. Specifically, the Corporate Defendants assert, in Count 1, Plaintiff brings a shareholder derivative claim on behalf of Voicebox. *See id*. The settled law of both Delaware (where Voicebox is organized) and Washington (the forum state and where *Plaintiff* alleges Voicebox has its principle place of business), Defendants maintain, require that derivative shareholder plaintiffs are shareholders at the time of the suit. *Id*. at ¶¶ 18-19 (citing *Arkansas Teach Ret. Sys. v. Countrywide Fin Corp.*, 75 A.3d 888, 894 (Del. 2013) and *Sound Infiniti, Inc. v. Snyder*, 169 Wn.2d 199, 212 (2010)). Plaintiff Peterson, however, was divested of his shares in April 2018, some four months before he initiated this action. *See id*. ¶ 15. Thus, the Corporate Defendants argue, Plaintiff Peterson lacks standing to pursue his claim, and, therefore, his breach of fiduciary claim against the Kennewicks should be deemed fraudulently joined. *See id*. Plaintiff, in his motion, responds that Washington's pleading standards require only that a plaintiff provide notice of the claim. Doc. 13 at 8 (citing Wash. Cup. Ct. CR 8(a)). Count 1, Plaintiff maintains, sufficiently puts the Kennewicks on notice of Plaintiff's claims. *Id*. at 8-9 (citing Compl. ¶¶ 5.1-5.7).

10

The Corporate Defendants have not met their heavy burden of establishing that Plaintiff's claims in Count 1 obviously fail according to settled rules of the state for the simple reason that Defendants do not make clear *which* state's rules actually govern. Indeed, the Corporate Defendants fail to explain (or even mention) the choice of law issue. *See generally* Doc. 1; Doc. 19. Instead, without explanation, the Corporate Defendants cite both Delaware and Washington law for their contention that Plaintiff lacks standing to bring Count 1. *See* Doc. 1 ¶¶ 17-18; Doc. 19 at 5-6.

Where, as the Corporate Defendants maintain, federal jurisdiction is founded on diversity of citizenship, courts "automatically apply" the law of the forum state to the substantive issues, as well as to the choice of law provisions. *Am. Nat. Ins. Co. v. JPMorgan Chase & Co.*, 893 F. Supp. 2d 218, 228 (D.D.C. 2012) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). However, where, as here, "the issue at hand involves the internal affairs of a business entity, the law of the state of formation usually controls the court's choice-of-law analysis." *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 765 (Bankr. W.D. La. 2013) (citing cases); *accord Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) (applying Massachusetts law to analyze direct claims brought by shareholders of Massachusetts-organized trust under the Investment Corporation Act). In the instant case, the forum state is, of course, Washington, while the state of formation is Delaware.

The issue is not merely a theoretical one. As the Corporate Defendants correctly assert, under Washington law, a plaintiff who has been divested of his shares lacks standing to bring derivative claims. *See Sound Infiniti, Inc.*, 169 Wash. 2d at 213-14 (finding that because Washington's CR 23.1 (derivative shareholder actions) requires derivative plaintiffs "to fairly and adequately represent the interests of shareholders," divested shareholder-plaintiffs lack standing

11

to bring derivative claims). Under Delaware law, however, a plaintiff who has been divested of his shares does *not* lack standing to pursue derivative claims *if* he alleges fraud against the corporate action that rescinded his shareholder status. *See Lewis v. Anderson*, 477 A.2d 1040, 1046 n. 10 (Del. 1984); *see also Sound Infiniti, Inc*., 169 Wash. 2d at 213-14 (noting that *Lewis* "relied on Delaware's version of CR 23.1, which (unlike Washington's version) does not require a plaintiff to fairly and adequately represent the interests of the shareholders"). The Corporate Defendants, in their notice of removal, neglect to mention Delaware's fraud exception.[8] Moreover, Plaintiff, either leading up to or as part of the Nuance Transaction, appears to have received shares of the Kennewick Trust, a new corporate entity. *See* Compl. ¶ 4.11. Under Delaware law, where "the plaintiff receives shares of a new corporate entity, the standing issue is less clear, as the plaintiff will have a financial interest in the derivative action." *Blasband v. Rales*, 971 F.2d 1034, 1040-41 (3d Cir. 1992) (citing Delaware cases).

Given the Corporate Defendants' failure to address choice of law—and, more particularly, how choice of law affects Plaintiff's standing to bring Count 1—the Court finds that Defendants have not proven by clear and convincing evidence that Plaintiff's claim against the nondiverse Kennewicks is fraudulently joined. *See*, *e.g.*, *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir.

---

[8] Given Defendants' heavy burden of establishing fraudulent joinder, the Court will not, *sua sponte*, analyze whether Plaintiff has sufficiently alleged "fraud" according to Delaware law. However, the Court notes that Plaintiff, in his Complaint, acknowledges that the Kennewicks and "the other preferred shareholder(s) on the Board of Directors" "approved" the Nuance Transaction. *See id*. According to Plaintiff, however, this supposed ratification cannot cleanse the transaction, as four of the five Voicebox directors were conflicted and otherwise incapable of acting in the corporate interest. *See id*. 4.23-4.26. "Further," Plaintiff maintains, "the Kennewicks and other preferred shareholders," some of whom had allegedly been "gift[ed]" stock by the Kennewicks, "controlled a majority of the outstanding Voicebox shares." *Id*. ¶¶ 4.10, 4.26. In addition, Plaintiff claims, the interested, conflicted Voicebox Board did not call for a vote of disinterested shareholders; and Plaintiff, "a significant common shareholder, was never offered the opportunity to vote on the Nuance Transaction at all." *Id*. ¶ 4.28. As to the presumably pre-merger formation of the Kennewick Trust, Plaintiff alleges that this, too, constitutes an "unfair arrangement to which Plaintiff did not agree." *Id*. ¶ 5.6.

12

2009); *see also Archuleta v. Am. Airlines, Inc.*, 2000 WL 656808, at *4 (C.D. Cal. May 12, 2000) ("All doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent") (citing *Gaus v. Miles, Inc.,* 980 F.2d 565, 566-67 (9th Cir.1992) and *Lieberman v. Meshkin, Mazandarani,* 1996 WL 732506, *3 (N.D. Cal. 1996)); *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (a district court must remand a case "unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency").[9]

C. Fraudulent "Misjoinder"[10]

The Corporate Defendants additionally, or alternatively, maintain that the Court should sever and remand Plaintiff's claim against the Kennewicks (and exercise jurisdiction over Plaintiff's claims against them) on the grounds of fraudulent "misjoinder." Doc. 1 ¶¶ 9-14; Doc. 19 at 4, 6-15. According to Defendants, Plaintiff's breach of fiduciary claim against the nondiverse Kennewicks "has no factual or legal overlap whatsoever with" Plaintiff's claims against the Corporate Defendants regarding his termination. *See* Doc. 19 at 4. "These facts," Defendants continue, "involve what has been called 'fraudulent *mis*joinder,'" and severance and remand of Count 1 is "called for by Supreme Court case law, analogous Ninth Circuit case law applying the doctrine of 'fraudulent joinder'… and case law from the Eleventh and Fifth Circuits expressly

---

[9] Having found that the Corporate Defendants have failed to demonstrate their sole asserted cause as to Plaintiff's claim being fraudulently joined, the Court need not address whether, as Plaintiff, in a footnote, maintains, has sufficiently raised direct (in addition to derivative) claims. *See* Doc. 13 at 9 n.2 (citing Compl. ¶¶ 2.1, 5.2, 5.6); *see also Lapidus*, 232 F.3d at 682 (whether a plaintiff's claims are direct or derivative in nature is determined according to state law); Deborah A. DeMott, *Shareholder Derivative Actions: Law and Practice* § 1:1 (2018) (noting that, in general, "[d]erivative litigation is uniquely complicated" because, *inter alia*, "special procedural rules" apply only to derivative (and not direct) litigation).

[10] In their notice of removal, the Corporate Defendants refer to "procedural misjoinder," while in their opposition brief, they refer to "fraudulent misjoinder." It is clear from the briefing that the Corporate Defendants use the terms interchangeably. For ease of reference, the Court uses here only "fraudulent misjoinder."

13

adopting or approving the doctrine of 'fraudulent *mis*joinder.'" *Id*. (emphasis in original). Plaintiff, in turn, cites a slew of cases noting that the Ninth Circuit "has never adopted" the fraudulent misjoinder test and that district courts in this Circuit have "repeatedly rejected" it. Doc. 19 at 9-11. In any event, Plaintiff asserts, Defendants do not dispute that CR 20(a) provides that a plaintiff may join in one action claims against multiple defendants if, *inter alia*, "any question of law or fact common to all defendants will arise in the action." *Id*. at 13 (quoting Wash. Sup. Ct. Civ. R. 20(a)). Here, Plaintiff asserts, "a chain of events was set into motion when the [Corporate] Defendants and the Kennewick Defendants" decided to merge Voicebox and Nuance "at the expense of Voicebox's employees and shareholders." *Id*. Thus, Plaintiff argues, although Plaintiff's breach of fiduciary duty claim (Count 1) is not alleged against the Corporate Defendants, there is a common set of facts. *Id*. at 13-14.

In their briefing, the Corporate Defendants overstate what is "called for" by Supreme Court caselaw and understate the number of courts in this Circuit that have declined to adopt the "fraudulent misjoinder" analysis. Specifically, the Supreme Court caselaw that Defendants cite stands for the unremarkable propositions that a corporation's principle place of business is determined using the "nerve center" test, Doc. 19 at 5 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)), and that the relevant time for determining a corporation's citizenship is when the lawsuit is commenced, Doc. 19 at 5 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)).[11]

---

[11] The only other Supreme Court case on which Defendants rely is *Wilson v. Republic Iron & Steel Co*., 257 U.S. 92, 98 (1921). Doc. 19 at 5. Defendants, citing *Wilson*, assert that Plaintiff Peterson failed to submit "admissible evidence" as to whether Voicebox's nerve center is in Washington, as Plaintiff maintains in his Complaint, or whether it is instead in Massachusetts, as the Corporate Defendants maintain in their briefing.

14

As to the doctrine of "fraudulent misjoinder," it was articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Plaintiff in *Tapscott*, an Alabama resident, filed in Alabama state court a putative class action against four defendants, one of whom was also an Alabama resident. *Id*. at 1355. Tapscott's original and first amended complaints alleged, *inter alia*, violations arising from sales of service contracts in connection with the sale of *automobiles*. *Id*. His second amended complaint, however, additionally alleged violations arising from the sale of extended service contracts in connection with the sale *of retail products*. *Id*. Lowe's, one of the diverse defendants named in the second amended complaint, filed in district court a notice of removal and a motion to sever the claims against it from the claims against the nondiverse defendants. *Id*. The representative plaintiffs, in turn, moved to remand the entirety of the matter. *Id*. The district court granted the motion to sever and remanded to state court as to all defendants except Lowe's. *Id*. Upholding the district court's actions, the *Tapscott* Court deemed it "important to note that [Plaintiffs] have not contended that Lowe's was properly joined with any other nondiverse defendants. Rather, they contend that while a court may disregard the citizenship of fraudulently joined parties, a misjoinder, no matter how egregious, is not fraudulent joinder." *Id*. at 1360. The *Tapscott* Court "disagree[d]," finding that "misjoinder" may be "fraudulent;" and that "fraudulent misjoinder" may be found where a claim against a diverse defendant has "no real connection with the controversy" alleged in the claims against a nondiverse defendant. *Id*. (internal quotation omitted). Here, the *Tapscott* Court found, Plaintiffs' "attempt to join these parties is so egregious as to constitute fraudulent [mis]joinder." *Id*.

The Ninth Circuit, the parties agree, has yet address the doctrine of fraudulent misjoinder. *See* Doc. 13 at 9; Doc. 19 at 4. However, as Plaintiff correctly points out, "the majority of district

15

courts within the Ninth Circuit have refused to adopt the doctrine." *Mohansingh v. Crop Prod. Servs., Inc.*, 2017 WL 4778579, at *3 (E.D. Cal. Oct. 23, 2017) (citing *J.T. Assocs., LLC v. Fairfield Dev., L.P.*, 2016 WL 1252612, at *8–9 (N.D. Cal. Mar. 31, 2016); *Thee Sombrero, Inc. v. Murphy*, 2015 WL 4399631, at *4 (C.D. Cal. July 7, 2015); *Stone-Jusas v. Wal-Mart Stores, Inc.*, 2014 WL 5341686, at *3 (D. Nev. Oct. 20, 2014); *Target Const., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 5048241, at *3 (D. Nev. Oct. 9, 2014); *Jurin v. Transamerica Life Ins. Co.*, 2014 WL 4364901, at *3 (N.D. Cal. Sept. 3, 2014)).

In fact, some "[d]istrict courts in the Ninth Circuit have gone further by rejecting the doctrine outright." *Early v. Northrop Grumman Corp.*, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013) (citing cases). District courts in this Circuit have noted that "judicial prudence [] cautions against adopting an additional exception to the complete-diversity rule," and that "it is axiomatic that removal under § 1441 should be narrowly construed and that any doubts are resolved in favor of remand." *Id.* (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006)). Indeed, many courts have found that the "better rule" is to "resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, [defendants] could seek removal of the cause to federal court." *Osborne*, 341 F. Supp. 2d at 1127; *see also Mohansingh*, 2017 WL 4778579, at *5 (same); *In re Plavix Prod. Liab. & Mktg. Litig.*, 2014 WL 4954654, at *14 (D. N.J. Oct. 1, 2014) (same); *Hanning v. Juarez*, 2013 WL 7095748, at *6 (D. Nev. Aug. 27, 2013), report and recommendation rejected, 2014 WL 294042 (D. Nev. Jan. 24, 2014) (same); *Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 871-72 (N.D. Ohio 2008)

(same); *HVAC Sales, Inc. v. Zurich Am. Ins. Grp.*, 2005 WL 2216950, at *7 (N.D. Cal. July 25, 2005) (same).[12]

In addition to disagreeing as to the general acceptance (or not) of the fraudulent misjoinder doctrine among district courts in this Circuit, the parties disagree as to whether the Court would need to find the joinder "egregious" in order to apply the doctrine. *Compare* Doc. 13 at 11 *with* Doc. 19 at 11-12. The parties further disagree as to whether any required "egregiousness" is met in the instant case. *Compare* Doc. 13 at 11-14 *with* Doc. 13 at 11-12; *see also Early v. Northrop Grumman Corp.*, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013) (citing cases and noting that: "[e]ven within the Eleventh Circuit it is unclear when 'mere misjoinder' becomes so 'egregious' [as] to constitute fraudulent misjoinder;" that some courts do not require the joinder to be "egregious at all;" and that still other courts "disagree about whether state or federal law should apply in determining the propriety of joinder"). The Court need not determine these issues because, as Plaintiff points out, there exists at least a common question of fact among all Defendants; thus, in the words of *Tapscott*, there exists a "connection" between the controversy alleged against the Kennewicks in Count 1, and the Corporate Defendants named in Counts 2-4. *See, e.g.*, Compl. ¶ 4.13 (asserting that "a couple of years" before the April 2018 merger, when Voicebox was "in a roughly similar posture, Nuance offered significantly more [money] in a bid to acquire Voicebox"); *id.* ¶ 5.8 ("reserv[ing]" Plaintiff Peterson's right to amend his Complaint if "discovery reveals that Nuance, or agents of Nuance, knowingly cooperated in structuring a deal to enrich the Kennewicks").

---

[12] Accordingly, the Court respectfully disagrees with the *Sutton* Court, which found that "[t]he District Courts, *including those in the Ninth Circuit*, are split as to the applicability of the *Tapscott* fraudulent misjoinder exception[.]" *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504 (E.D. Cal. 2008) (emphasis added)). The *Sutton* Court here cites to only one Ninth Circuit district court case; and, in so doing, it compares this case to three Ninth Circuit court cases that reject the doctrine. *See* 251 F.R.D. at 504. Thus, the Court finds the Corporate Defendants' reliance on *Sutton* unpersuasive. *See* Doc. 19 at 13.

17

For the reasons described above, the Court concurs with overwhelming number of district courts in this Circuit that the better course of action is to remand the entirety of the matter and leave to the sound judgment of the state court any motion to sever (which, if successful, could be followed by removal); and that the doctrine contradicts the narrow construction properly given to removal statutes, and the general presumption against fraudulent joinder. In any event, as explained above, Plaintiff has sufficiently alleged that a question of fact "common to all defendants will arise in the action." Wash. Sup. Ct. Civ. R. 20; *see also League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 558 F.2d 914, 917 (9th Cir. 1977) (CR 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits"). Thus, the Court finds that the Corporate Defendants have not demonstrated by clear and convincing evidence that Plaintiff's claims are fraudulently joined. *See*, *e.g.*, *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Nor have the Corporate Defendants demonstrated by a preponderance of the evidence that any other basis exists for finding that removal is proper. *See*, *e.g.*, *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). Accordingly, the Court finds that this matter must be remanded to state court. *See, e.g., id.*; *Gaus v. Miles, Inc.,* 980 F.2d 565, 566-67 (9th Cir.1992); *Lieberman v. Meshkin, Mazandarani,* 1996 WL 732506, *3 (N.D. Cal. 1996)); *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009).

## IV. CONCLUSION

Having found that the entirety of this matter should be remanded to state court, the Court hereby ORDERS as follows:

1) Plaintiff's motion to remand (Doc. 13) is GRANTED;

18

2) Plaintiff's motion for default judgment against the Kennewicks (Doc. 10) is DENIED for lack of subject matter jurisdiction and as moot;

3) The Kennewicks' motion to dismiss (Doc. 15) is DENIED for lack of subject matter jurisdiction and as moot;

4) This case shall be remanded to the Superior Court of Washington for King County;

5) This case is CLOSED.

Dated this 13th day of December, 2018.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE